**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-1868

LIBERTY COMMONS NURSING AND REHAB CENTER -
JOHNSTON,

Petitioner,

versus

MICHAEL O. LEAVITT, Secretary of the United
States Department of Health & Human Services;
U. S. DEPARTMENT OF HEALTH & HUMAN SERVICES,

Respondents.

On Petition for Review of an Order of the United States Department
of Health & Human Services.  (A-05-91; CR1294)

Argued:  May 23, 2007                    Decided:  July 20, 2007

Before WILLIAMS, Chief Judge, MOTZ, Circuit Judge, and HAMILTON,
Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Joseph L. Bianculli, HEALTH CARE LAWYERS, P.L.C.,
Arlington, Virginia, for Petitioner. Sonia Gaye Burnett, Assistant
Regional Counsel, UNITED STATES DEPARTMENT OF HEALTH & HUMAN
SERVICES, Office of the General Counsel, Washington, D.C., for
Respondents. **ON BRIEF:** Daniel Meron, General Counsel, Christine A.
Bradfield, Acting Chief Counsel, Region IV, UNITED STATES
DEPARTMENT OF HEALTH & HUMAN SERVICES, Office of the General
Counsel, Washington, D.C., for Respondents.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A North Carolina nursing facility challenges the determination of the Department of Health and Human Services that the facility's noncompliance with federal regulations was at the "immediate jeopardy" level under the regulatory framework. Finding no error, we affirm the agency's determination. We also reject the nursing facility's contention that the agency's review process violated the Administrative Procedure Act or due process requirements.

I.

Federal regulations require that nursing facilities receiving Medicare funds comply with certain safety requirements. If surveyors find a facility has failed to comply, they assess the level of the noncompliance to determine the appropriate penalty. See, e.g., 42 U.S.C. 1395i-3(h) (2006); 42 C.F.R. §§ 483.1 et seq. (2006); § 488.301 (2006). Liberty Commons, a nursing facility in Benson, North Carolina, participates in and receives funds from Medicare, and was surveyed for regulatory compliance on October 23, 2003. The North Carolina State Department of Health and Human Services conducted the annual survey as an agent for the Centers for Medicare and Medicaid Services (CMS), an agency of the federal department of Health and Human Services (HHS or "the Secretary").

The surveyors found that Liberty Commons had neglected to provide proper care to residents, in violation of 42 C.F.R. §

3

483.13(c) (2006). In particular, one resident of the facility, referred to as Resident #2, was cared for on October 21, 2003, by a nurse's assistant wearing latex gloves, even though the resident had a documented allergy to latex of which the nursing facility was aware. The resident then complained of shortness of breath, and was hospitalized.

CMS found that the following series of staff errors at the nursing home had led to this noncompliance: (1) the nurse's assistant was unfamiliar with the resident and his allergy; (2) warning signs about the latex allergy were missing from the resident's room; (3) the nurse's assistant did not receive a verbal warning at the beginning of her shift about the allergy; and (4) the nurse's assistant failed to consult the resident's record until the end of her shift. Accordingly, CMS found that the noncompliance was at the "immediate jeopardy" level, and the Secretary imposed a civil monetary penalty.

Liberty Commons challenged the CMS decision through the administrative adjudication process provided by HHS. Following a January 12, 2005 hearing, an Administrative Law Judge (ALJ) upheld the findings of noncompliance and immediate jeopardy, but reduced the fine against the nursing facility. The ALJ found that although Liberty Commons had a plan for preventing this type of violation -- i.e. providing care to patients with known allergies -- it was lax in implementing this plan and had not sufficiently trained its

4

staff, and that the multiple failures to alert the nurse's assistant constituted "persuasive proof that [the] problem was systemic."

The ALJ further concluded that even if there was not sufficient medical evidence to establish that Resident #2 did have a latex allergy, an "immediate jeopardy" designation was still appropriate because of "the weakness of [Liberty Commons'] system for protecting its residents demonstrated by the series of errors that occurred in providing care to Resident #2."  It is not disputed that at the time of the incident, Liberty Commons believed Resident #2 did have a latex allergy.  The ALJ inferred from the treatment given to Resident #2 "that other residents would be jeopardized when placed in similar circumstances and that there would be a likelihood of serious injury, harm, or death as a consequence" and that "[t]he systemic failure to implement protective measures . . . would jeopardize any resident who is dependent on a staff to treat him or her subject to safety precautions."  Several other residents of Liberty Commons had allergies to foods or other substances, so the facility's "systemic failure" to handle residents' allergies with appropriate precautions could endanger them, as well as future residents with allergies or special needs.  See Respondent's Br. at 18.

Liberty Commons appealed the ALJ decision to the HHS Departmental Appeals Board (DAB).  The DAB, in a June 12, 2006

5

decision, held that (1) the ALJ's conclusion that Liberty Commons was not in substantial compliance was supported by substantial evidence, and (2) the immediate jeopardy finding was not clearly erroneous.

Liberty Commons concedes that it failed to comply with the regulatory requirements. It contends, however, that the Secretary erred in determining that the noncompliance rose to the "immediate jeopardy" level. It maintains that because the evidence does not sufficiently establish that Resident #2 actually had a latex allergy or suffered serious harm because of the noncompliance, neither he nor any other particular, identifiable resident was likely to be harmed by its particular violations on October 21, 2003. Liberty Commons also asserts that the DAB applied the wrong burden of proof in its review of the ALJ decision. Br. of Petitioner at 41-50.

II.

A.

The federal regulation at issue here defines "immediate jeopardy" as "a situation in which the provider's noncompliance with one or more requirements of participation has caused, or is likely to cause, serious injury, harm, impairment, or death to a resident." 42 C.F.R. § 488.301. Liberty Commons does not dispute

6

that this provision controls the case; it merely disagrees with how the Secretary has interpreted and applied the regulation.

"When the question before the court is whether an agency has properly interpreted and applied its own regulation, the reviewing court must give the agency's interpretation 'substantial deference.'" Maryland General Hosp. v. Thompson, 308 F.3d 340, 343 (4th Cir. 2002). That said, "an interpretation that is inconsistent with the plain language of an unambiguous regulation cannot be upheld simply because the interpretation, standing alone, seems reasonable enough." Id. at 347. Thus, we must defer to the Secretary's reasonable interpretation of the regulation so long as it is not inconsistent with the plain language of the regulation. Moreover, we must defer to the agency's findings of fact "if supported by substantial evidence on the record considered as a whole." 42 U.S.C. § 1320a-7a(e) (2006).

Liberty Commons argues that the Secretary has misinterpreted and misapplied the regulation in question in finding that the facility was in noncompliance at the "immediate jeopardy" level. Liberty Commons rests its case -- as it must given the deference owed to the agency's interpretation of its regulation -- on its reading of "the regulation's plain language," Br. of Petitioner at 39, which it asserts is "clear and unambiguous," id. at 22. Liberty Commons reads the "the plain language" of the regulation to state that an "immediate jeopardy" finding "requires a

7

determination of [the noncompliance's] impact on <u>one or more</u> of the facility's <u>actual</u> residents." Petitioner's Reply Br. at 9 (emphasis added).

But these are the words of Liberty Commons, not of the regulation. By its terms, the regulation only requires that the nursing home's noncompliance is likely to cause harm to "<u>a</u> resident." 42 C.F.R. § 488.301 (emphasis added). The word "actual" does not appear in the regulation; the phrase "one or more" does appear in the regulation, but in reference to the nursing home's noncompliance with "one or more requirements" of the regulatory scheme, not as a modifier of "resident." <u>Cf.</u> Br. of Petitioner at 22; Petitioner's Reply Br. at 9.

The use of the indefinite article "a" -- and no other modifier -- before "resident" suggests that the regulation does not require that the noncompliance jeopardizes "one or more actual" or identifiable residents. If the Secretary had intended that specific requirement, he would have used that language in writing the rule. Moreover, because no actual harm to a resident is required for an "immediate jeopardy" finding, only "likely" harm, the definition as a whole encompasses future harms to an as yet unidentified resident. If, as Liberty Commons insists, the regulation required otherwise, there would be no need to include the word "likely" -- for an actual resident either would or would not have been harmed. For these reasons, we believe the

8

Secretary's view -- that "a resident" has a broader meaning and does not require establishing harm from a particular, identifiable compliance violation to a particular, identifiable, resident -- is, at the very least, a reasonable interpretation of the regulation's language, to which we must defer. See Maryland General Hosp., 308 F.3d at 343.

Accordingly, Liberty Commons cannot prevail. Substantial evidence supports the ALJ's determination that the facility's noncompliance problem was "systemic." That is, the noncompliance consisted not merely of using latex on a single resident believed to be allergic to latex, but also of failing to follow the necessary plan and procedures to protect residents who have allergies. As the ALJ found, "the weakness of [Liberty Commons'] system for protecting its residents [is] demonstrated by the series of errors that occurred in providing care to Resident #2." For this reason, the ALJ concluded that "[t]he systemic failure to implement protective measures . . . would jeopardize any resident who is dependent on a staff to treat him or her subject to safety precautions." Finding no error, we affirm the Secretary's determination that the noncompliance met the requirement of "immediate jeopardy" under the governing regulation.

B.

Liberty Commons further contends that the burden of proof the Secretary applied during the administrative review process

"offend[s]" the Administrative Procedure Act (APA), 5 U.S.C. § 500 et seq. (2000), and due process of law. Br. of Petitioner at 23; 41-50. In particular, Liberty Commons objects that, after the ALJ found it was not in compliance, the DAB placed the burden on it, the petitioner, to show that CMS's determination that the noncompliance was at the "immediate jeopardy" level was clearly erroneous, rather than requiring the Secretary to again establish this during the appeals procedure.

This argument ignores the relevant regulation, which explicitly sets forth the burden of proof with respect to the level of noncompliance: "CMS's determination as to the level of noncompliance . . . must be upheld unless it is clearly erroneous." See 42 C.F.R. § 498.60 (2006). In light of the clear instructions in this regulation, which the Board unquestionably followed, we construe Liberty's argument here to be either that (1) HHS lacks statutory authority to have issued this regulation, or (2) the regulation is unconstitutional. Neither is the case.

The APA, on which Liberty relies, only creates default rules for agency adjudications. But Congress, in the Social Security Act, 42 U.S.C. §§ 1302, 1395hh (2006), empowered HHS to create regulations for its Medicare adjudications, and so the APA provision relied on by Liberty Commons simply does not apply to this case. Moreover, we find no support for the position that the agency appeal procedure violates the Constitution's Due Process

10

Clause.  The purpose of the statutory and regulatory framework is to guide the distribution of Medicare funds to appropriate facilities -- namely, those that comply with safety regulations. To be sure, Liberty Commons was due some process before being sanctioned and fined for a regulatory violation, see Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976).  But, it received a full evidentiary hearing before an ALJ, followed by an opportunity to appeal the ALJ's decision to the DAB.  Balancing the Government's interests in spending Medicare funds appropriately and protecting the safety of nursing home residents, and a nursing home's interest in the financial and reputational cost of the noncompliance finding, we can only conclude that the process Liberty Commons received was sufficient to reduce the risk of erroneous deprivation. Id. Because Liberty Commons received all the process it was due, its constitutional due process claim must also fail.

III.

For the foregoing reasons, the order of the Secretary is

AFFIRMED.

11